NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0361n.06

No. 25-5578

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| QUANTRESE BRAZZELL, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: STRANCH, BUSH, and BLOOMEKATZ, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Quantrese Brazzell was convicted at trial of narcotics and firearm charges stemming from a traffic stop during which law enforcement searched his vehicle and recovered a rifle and pills. Brazzell challenges the validity of this search as well as the introduction at trial of two jail call recordings in which he implies that there was a second firearm in his vehicle even though no such firearm was found. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

On December 31, 2022, around 11:39 a.m., Memphis Police Department Officers Booker Holloway and Amber Campos responded to a 911 call about a vehicle that had been stopped at a traffic light for an extended time. The officers were also flagged down by a nearby concerned citizen who thought the individual in the car was having a medical emergency. Holloway and

Campos arrived on the scene at around 11:48 a.m. and approached the vehicle on either side, with Campos approaching from the driver's side and knocking on the rear window. Brazzell, who was sitting alone in the car in the driver's seat, rolled down his window after the third knock. The officers asked Brazzell multiple questions and issued several instructions, including directing him to put the car in park, turn off the engine, and exit the vehicle. Brazzell appeared confused and struggled to follow these commands. After about a minute, he complied and stepped out of the vehicle. Campos handcuffed him to ensure officer safety, patted him down, and placed him in the back of the police car. Campos smelled alcohol on Brazzell when he exited his vehicle, but she did not inform Holloway of this at the time. Brazzell told the officers that he had been sitting at the intersection since five or six that morning while waiting for a tow truck because his transmission and "shifter" were broken. At the time, Holloway suspected that Brazzell was either having a medical emergency or was under the influence of narcotics, but he was not sure which one. Video footage shows that the officers asked no questions related to a medical emergency.

Immediately after Campos detained Brazzell, and about three minutes after arriving on the scene, Holloway began to search Brazzell's vehicle. During this initial search (Search 1), he opened the center console of the front seat where he found a plastic bag filled with other, smaller plastic bags that contained pills. Over the next few minutes, Holloway continued to search Brazzell's vehicle, opening the glove box, moving the seats back and forth, and rummaging through items in the back seat. MPD Officer Hannah Shelton arrived on the scene shortly thereafter. She began a second search of Brazzell's car (Search 2), opening the trunk where she found a rifle, ammunition, a scale, an open bottle of alcohol, bottles of medicine, a box of brake pads, and various clothing items.

Shortly after 1:00 p.m., MPD officers began to conduct field sobriety tests on Brazzell, one of which he failed. Shortly thereafter, Campos began to draft a tow ticket,[1] and Holloway called his Lieutenant to discuss the stop and towing the vehicle. Holloway instructed Campos to "do an inventory of the car," noting that it did not "have to be very specific." Campos clarified, and Holloway confirmed, that the inventory should be of the "whole thing" and then proceeded to search Brazzell's car. From 2:18 p.m. to 2:25 p.m., Campos searched Brazzell's car (Search 3), looking in the front seat, glove compartment, back seat, and trunk. During the search, she listed items on the tow ticket that she found in the vehicle. The vehicle was towed, and Brazzell was arrested for driving under the influence, public intoxication, possession of narcotics with intent to sell, illegal possession of a firearm, and possession of a firearm as a felon.

### B.    Procedural History

On December 12, 2023, Brazzell was indicted in the United States District Court for the Western District of Tennessee for possession with the intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 1); and for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 2). On May 3, 2024, Brazzell moved to suppress all evidence obtained from the stop and searches of his vehicle. On June 10, a magistrate judge held a hearing on Brazzell's motion to suppress, during which Officers Holloway and Campos testified. That same day, the court made oral proposed findings of fact and conclusions of law, ultimately recommending that the motion to suppress be denied. The magistrate judge recommended[2] finding

---

[1] Although no tow ticket was entered into evidence at trial, the body camera footage shows Officer Campos filling out the ticket.

[2] The magistrate judge issued a written report and recommendation, recommending that the motion to suppress be denied and stating that the court's oral ruling during the motion to suppress hearing would serve as the proposed findings of fact and recommended conclusions of law.

that the initial search of Brazzell's vehicle was constitutional under the automobile exception, and alternatively, that the evidence should not be excluded under the inevitable discovery exception, since the evidence would have inevitably been found during an inventory search. The district court adopted the magistrate's report and recommendation but declined to decide whether the officers' warrantless search of Brazzell's vehicle was valid under the automobile exception; instead, it denied the motion to suppress because the evidence would eventually have been found when the officers conducted an inventory search.

Prior to trial, Brazzell filed two motions in limine, seeking to exclude recordings of two calls he made from jail to a female acquaintance during which he discussed the charges and evidence against him. He argued that the jail calls were unfairly prejudicial and should be excluded under Federal Rule of Evidence 403, but the district court denied his motions and allowed the recordings to be played to the jury and introduced into evidence. On January 30, 2025, the jury found Brazzell guilty on both counts, and the court sentenced him to 150 months' imprisonment. Brazzell timely appealed.

## II.    ANALYSIS

### A.    The Motion to Suppress

Brazzell argues that the district court erred in denying his motion to suppress the evidence obtained from his vehicle, including narcotics and a firearm, because law enforcement conducted a warrantless search of his vehicle as well as an invalid inventory search. "On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo, viewing the facts in the light most favorable to the government." *United States v. Guerrero*, 168 F.4th 454, 459–60 (6th Cir. 2026).

1.     The Automobile Exception

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To protect this constitutional right, law enforcement generally must obtain a valid warrant before searching private property. *United States v. Morgan*, 71 F.4th 540, 543 (6th Cir. 2023). One exception to this requirement is the automobile exception, which allows law enforcement to search a vehicle without a warrant if they have "probable cause to believe that [it] contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). Probable cause exists where there are "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Id.* at 647–48 (citation modified). The determination of whether probable cause existed is a "commonsense, practical question" based on the totality of the circumstances. *Id.* at 648 (citation modified). Courts do not consider events that occurred after the search or the police officers' subjective intent; instead, they look to the "objective facts known to the officers at the time of the search." *Id.* (citation modified).

The Government argues that Officer Holloway's warrantless search of Brazzell's vehicle was constitutional under the automobile exception because the officers had probable cause to believe that Brazzell was driving under the influence because he sat at the intersection for an extended period, was apparently confused, had difficulty following orders, and his eyes were bloodshot. Brazzell counters that such facts are not sufficient to establish reasonable grounds to believe that evidence of a crime would be found in his vehicle. We need not decide the validity of the initial search of Brazzell's vehicle because, as discussed below, the evidence would inevitably have been discovered pursuant to the subsequent inventory search.

###### 2.     The Inventory Search

The Government argues that even if the initial search of the vehicle was illegal, the officers would have inevitably discovered the pills when they conducted a proper inventory search. The inventory search is another exception to the Fourth Amendment's warrant requirement and allows police to search a vehicle to catalogue its contents. *See Florida v. Wells*, 495 U.S. 1, 4 (1990). Its purpose is to protect an owner's property while in police custody and to guard police from claims of lost, stolen, or vandalized property. *Smith*, 510 F.3d at 650–51. Police may conduct an inventory search when they are in lawful custody of a vehicle and follow a standard police procedure or an established routine. *United States v. Alexander*, 954 F.3d 910, 915 (6th Cir. 2020). While this standard procedure need not be written, it must be sufficiently well-defined. *Id.* Law enforcement may not conduct an inventory search for purposes of investigation or as a "ruse for a general rummaging in order to discover incriminating evidence." *Id.* (citation modified). But the fact that an officer suspects contraband may be found does not invalidate an otherwise proper inventory search. *Id.*

The MPD's Tow-in Policy provides that when a defendant is under arrest for DUI, officers must allow him "the option to turn his vehicle over to a third party or allow it to remain properly parked," unless "the defendant is so intoxicated that he has no idea what he is doing or even where he is." R. 40-1, Ex. 1 to Mot. to Suppress, PageID 123. The defendant may also "authorize a third party at the scene who is not under arrest to legally park the vehicle." *Id.* at PageID 122. "These options must be explained to the defendant before the decision to tow is made." *Id.* Only if the vehicle cannot be legally parked, left on private property, or released to a third party, should the police tow it. *Id.* MPD Tow-in Policy further provides that "vehicles should be inventoried

whenever they are towed, regardless [of] whether a private wrecker or the police wrecker does the towing." *Id.* at PageID 128.

Brazzell contends that the officers did not follow MPD's Tow-in Policy because they did not inform Brazzell of these options before deciding to tow his vehicle. Although the officers did fail to explain these options to Brazzell, the record shows that his only option under the existing circumstances was for law enforcement to tow his car. Brazzell's car was stopped in the middle of a road, no third party was present at the scene to legally park it, and though he claimed to have called a tow truck long ago, none was present. Even if, at the police's direction, Brazzell had a private company tow his vehicle, it still would have been subject to an inventory search pursuant to MPD's Tow-in Policy. *See id.* at PageID 128. Therefore, informing Brazzell of the options would have been pointless as any alternatives were impracticable. Any error in failing to explain other options to Brazzell was harmless and did not invalidate the search.

Brazzell also asserts that Officer Shelton conducted the inventory search for investigative purposes rather than for inventory purposes. At the outset we note that the parties dispute which officer—Shelton or Campos—conducted the inventory search. Brazzell contends that Shelton conducted the search because she testified to having "inventoried" the trunk, while the Government asserts that Campos inventoried the vehicle based on the body camera footage. The district court found that Campos conducted the inventory search because the body camera footage depicts her looking through the vehicle and writing notes about its contents on the tow ticket. Based on this footage, we find that the district court did not clearly err in this finding, and therefore analyze whether Campos's—not Shelton's—search of the vehicle was conducted for a proper purpose.

The scope of an inventory search per MPD's Policy is as follows:

> An inventory should include the area of the vehicle to which an officer has access. If the keys to the trunk and/or glove compartment are in the officer's possession, the officer should inventory these areas even if locked. If the officer does not have these keys and the compartments are locked, the officer should not inventory them and should note that the compartments were locked in the officer's report. If the compartments are unlocked, they should be inventoried. All closed containers found within an inventoried vehicle should be examined and contents listed unless locked and no key is available. This is permissible as long as such an examination can be conducted without a forcible entry that would result in property damage.

*Id.* "[A]ny unattached items of monetary value will be removed and tagged in the property room. This includes, but [is] not limited to, paper money, cell phones, laptops, eyewear, etc." *Id.*

The record shows that Campos searched each area of Brazzell's vehicle to which she had access, including the front seats, back seats, and trunk. Following the policy, she searched the "whole [vehicle]" as instructed by Holloway. She opened and searched the glove compartment and looked through several containers found in the trunk. Throughout the search, she wrote notes on the tow ticket, detailing items of value that she found. The district court determined that Campos included in the inventory non-contraband items of value such as cigarettes, articles of clothing, cleaning supplies, toiletries, and bags. Although the district court found that "Campos's inventory was not exhaustive," officers are "entitled to a measure of flexibility in determining what items in the vehicle were valuable for the purposes of the inventory search policy." *United States v. Hockenberry*, 730 F.3d 645, 661 (6th Cir. 2013) (citation modified). The primary question is whether Campos was "acting in bad faith or for the sole purposes of investigation." *Id.* When Holloway instructed Campos to conduct this "inventory of the car," he discussed whether she should include "clothes, or sweaty clothes" in the inventory—further demonstrating neither officer understood this third search to be intended primarily for investigatory purposes. Brazzell has not

pointed to anything in the record showing that Campos was inventorying for a proscribed purpose. Thus, on this record, Campos conducted an appropriate inventory search.

The Government contends that the firearm and narcotics would inevitably have been discovered during this inventory search. Under the inevitable-discovery doctrine, we determine, "viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *Alexander*, 954 F.3d at 916 (quoting *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995)). Even if Officers Holloway and Shelton did not search the vehicle, pursuant to MPD's Tow-in Policy, Officer Campos would have conducted her inventory search prior to the car being towed. During this search, she would have discovered the pills in the center console and the rifle in the trunk. Accordingly, because an officer would inevitably have discovered the contraband during the inventory search, we affirm the district court's denial of the motion to suppress.

### B.     The Jail Calls

At trial, the Government sought to introduce recordings of two jail calls between Brazzell and a female acquaintance, during which Brazzell states that he has been charged with drug and firearm offenses, is in a bad situation, and needs to make the charges go away. Brazzell moved to exclude these recordings under Federal Rule of Evidence 403 for unfair prejudice, confusing the issues, and misleading the jury. The district court permitted the Government to introduce these recordings, finding that they were relevant and that the risk of unfair prejudice did not substantially outweigh the probative value because the calls did not confuse the issues or mislead the jury.

On appeal, Brazzell contests one statement in particular: in the first call, the woman states that she wishes Brazzell had enough time to lock his glove box, to which he responds, "Na, that one still in there. They got the big one." Brazzell argues that this statement is unfairly prejudicial

under Rule 403 because it refers to a second firearm in his glove box, but law enforcement did not find a second firearm and the Government did not bring any charges related to a second firearm. He therefore contends that the district court erred in admitting the calls because they are unfairly prejudicial, have limited probative value, and risk confusing the issues and misleading the jury. The Government counters that the district court properly admitted the jail calls because they were relevant and not unfairly prejudicial; and if the court erred in admitting them, any such error was harmless.

We typically review a district court's evidentiary rulings for abuse of discretion. *United States v. Jaffal*, 79 F.4th 582, 594 (6th Cir. 2023). The district court "enjoys broad discretion when determining questions of admissibility, so an evidentiary ruling is not to be lightly overturned." *United States v. Curry*, 170 F.4th 559, 570 (6th Cir. 2026) (citation modified). A trial court may exclude evidence under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. Evidence has probative value if it has "any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if the trial court errs in admitting evidence, an error "that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). Where the government introduces overwhelming evidence at trial to convict a defendant even absent the wrongly admitted evidence, the error is harmless. *United States v. Stephens*, 549 F.3d 459, 463–64 (6th Cir. 2008).

The Government contends that even if the trial court erred in admitting the contested portions of the recordings, any such error was harmless because there was sufficient evidence admitted at trial to convict Brazzell. At trial, the Government introduced body camera footage showing the rifle in the vehicle that Brazzell claimed to own. Several MPD officers testified at

trial that they searched Brazzell's vehicle and discovered contraband therein, including the rifle. Brazzell's primary defense was that he did not know about the rifle. But the uncontested portions of the jail calls included statements in which Brazzell references the rifle in his vehicle and discusses why he carries a gun in the car. Because this evidence was clearly sufficient to convict Brazzell, even without the contested statements, any error by the trial court in admitting the calls was harmless. We therefore affirm.

## III.   CONCLUSION

For the foregoing reasons, we **AFFIRM**.